UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA



FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

2017 APR 19  AM 11: 48

SIGN _____LLH_____
BY DEPUTY CLERK

| | |
|---|---|
| Ronald Everett Smith, Jr. | * CIVIL ACTION NO. |
| | * |
| | * COMPLAINT |
| Plaintiff | * |
| | * JURY TRIAL DEMANDED |
| vs. | * |
| | * JUDGE: |
| PRINCIPAL LIFE INSURANCE CO. | * |
| (Principal Financial Group) | * |
| | * |

*************************************************************************

Plaintiff, Ronald E. Smith, Jr. (referred to as Ronald Smith or 'I') for his complaint against Principal Life Insurance Company, also known as Principal Mutual Life Insurance Company and or Principal Financial Group (jointly referred to as Principal Life), alleges as follows:

NATURE OF THE CASE and RELEVANT FACTS

1. Plaintiff, Ronald E. Smith, Jr. entered into a Broker Contract with Principal Life in or before September 2006. I sold and delivered policy number 8101745 (now: 8153025), on the life of Nola G. Smith. I have an Acknowledgment of Delivery from Principal Life dated September 8, 2006. The initial contract began at $ 754,861.90.

2. The insured Nola G. Smith of Louisiana is the grandmother of the agent/broker/plaintiff Ronald Smith.

3. The policy was a Select Series 10 Year Single Premium Deferred Annuity with a minimum 3% interest rate on renewal.

4. I, Ronald Smith, have serviced the contract for more than 10 years, including providing forms for withdrawals over the years, and as recent as 2017 during the new renewal contract period.

1

5. During the summer of 2016 I contacted Principle Life for information on the renewal, other options and on the renewal commission. I was told I would receive the renewal commission and was sent a schedule that for the 10 year annuity showed an asterisk '*' and implied that it paid the same as the longer termed contracts, such as 7 or 8 years.

6. I called again in August 2016 to check on what would be needed to renew; and again was told I would receive renewal commissions, but due to the client's age they were not sure if it was 1% or more. At that time I had the option to move the money to another company with no fees to the client and I would have received commissions; but because I was told I would receive commissions and due to the other short-term options; we chose to renew. I had much influence on the decision as her grandson; and have been in the insurance business for 28 years.

7. I also had the option to annuitize the policy and did receive illustrations concerning such; but because of tax consequences the current policy was continued.

8. The client, Nola G. Smith, received a letter from Principal Life dated September 7, 2016, stating: "On September 2, 2016, your annuity contract will reach the end of its guaranteed period... if you do not want to make any changes to your contract your contract (it) will automatically renew for a new 10-year guaranteed period. The interest rate will be 3.0% and will be guaranteed for 10-years..."

9. Then, the client, Nola G. Smith, received a letter from Principal Life dated September 8, 2016, stating: "Dear Nola G. Smith: This is to confirm the retirement age of your contract has been extended to age 105... Sincerely, The Principal Financial Group... Your representative Ronald Smith Jr; 001079-13946"

10. The client's birth date is October 18, 1918 and she was Issue Age 87 in 2006; and age 97 at the time of renewal; thus changing the 'guaranteed period' to 7-8 years.

11. About September or October, I, Ronald Smith the agent/broker, was told by Principal Life that I would not be receiving the renewal commission due to the client's age.

12. The client, Nola G. Smith, received a letter from Principal Life dated November 8, 2016, stating: "At this time Principal Life has renewed your contract for a new 10-year guaranteed period… your contract number has changed from 8101745 to 8153025; your interest rate… of 10-years is 3.0%; your renewal value is $1,075,412.48. …Your new surrender charge scale is 7% (year 1-3), 6% (year 4-5), 5% (year 5-8), 4% (9-10). …Sincerely The Principal… Your representative Ronald Smith Jr 1079-13946. Corporate Center… Iowa 1-800-852-4450."

13. That is One Million Seventy-five thousand four hundred and twelve dollars upon which renewal commission would be based.

14. November 8, 2016 at 3:38 pm a received an email stating, "Money has been applied to this contract… Amount Received $1,075,412.48. Product Select Series Annuity."

15. Christmas 2016, I, Ronald Smith, received a "Thank you!" card from Principal Financial Group saying in hand writing, "Ron, Thanks for the business and continued success this coming year. Happy Holidays!!! Scott & Geri." Geri Snyder, Regional V.P. and Scott Pries, Internal Wholesaler.

16. After calling a third time the commission department, "Feb. 9, 2017, 3:32 pm," I received the following email. "Hi Everett (my middle name), "Commissions are not paid on renewal of the 3 year PSSA. All other plans pay out commissions indicated in the chart. Thank you! Jeffrey Kreyling, Markerter Representative." PSSA refers to the product, Principal Select Series Annuity.

17. The Renewal Commission Schedule was changed sometime around September 2016; the newer "Principal Select Series Annuity (PSSA)" did not include the "10-year period" but

3

for the 9 year was 2% to age 79; and 1% to age 85 for 'premiums <= $2million; but 1% on 'all issue ages' for 'premiums > $2,000,000." Note that the previous schedule did not state this; nor does this schedule use the term '10-year Guarantee Period.'

18. I have continued to service this contract and am still currently listed as a Producer/Agent for 'Principal Life Insurance Company;' Status 'active,' with the Louisiana Department of Insurance.

FIRST CAUSE OF ACTION

Breach of Contract

LA Civil Code: Art. 1757. Sources of obligations

    Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts.

    Acts 1984, No. 331, §1, eff. Jan. 1, 1985.

Art. 1759. Good faith; Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.

Art. 1763. Definition

    A real obligation is a duty correlative and incidental to a real right.

Art. 1768. Expressed and implied conditions

    Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties.

Art. 1908. Bilateral or synallagmatic contracts: A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other.

19.     Principal Life failed to meet their obligations to the plaintiff/broker on the renewal contract. They gave no consideration; where the broker acted in good faith. More over there is no turning back for the client or agent due to the sensitivity of age. Thus, the only recourse, and consider that Principal Life is only paying 3% for 10 years to the insurer, is to give the agent/broker/plaintiff the commissions due of 1% according to the renewal commission schedule which actually has no "10-year guarantee" listed and which was assured to the plaintiff by not one but two phone center representatives.

## SECOND CAUSE OF ACTION

**Louisiana RS 51:1405:**

**'A. ...unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.'**

LA Civil Code: Art. 1757. Sources of obligations: Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, <u>unjust enrichment</u> and other acts or facts.

20.     Plaintiffs repeat and re-allege the facts and allegations set forth in Paragraphs 1 through 19 previously herein.

21.     The Plaintiff alleges that Principal Life has engaged in unfair business practices, by not giving fair 'transparency' of commissions by first two representatives. Ronald Smith, the plaintiff/broker gave the policy number and they had available of the client's age.

22.     The Principal Financial Group, principal.com website April 2017 states, "We have $591.6 billion in assets under management... One of the World's Most Ethical Companies."

5

One of the first health insurance policies the plaintiff sold about 1989 was through the Principal; and Principal paid tens of thousands of dollars on claims for a pre-mature born baby. The plaintiff believes Principal is an ethical company and prays they will pay the renewal commission and should re-write their commission schedule to be unambiguous and cover all plans sold.

23. The plaintiff had an adjusted gross income 2016 of less than $ 42,000 and this failed assurance of renewal commissions is an unjust burden; especially considering Principals' past and future gain of this million-dollar plus contract.

24. Again the Plaintiff cannot be placed in the position where he called in the summer of 2016, and seeks the 1% commission as well as whatever emotional, punitive and or exemplary damages are deemed fair by Judge or Jury. The Plaintiff reminds the Principal that State Farm, National Life and others have paid punitive damages in the hundreds of thousands of dollars, where the actual cost was less than $2,000. And here the commission would have been over $10,000. This was not an isolated clerical error on an incorrect decision by a phone representative. It was due to a commission policy from the highest company employees with full knowledge and experts to review the schedules. These experts were also at least partially negligent in leaving at least one (10-year) product off the schedule. The schedule was a knowing deliberate production of Principal Life and Principal Financial Group and any ambiguities were a result of their disregard or negligence.

### THIRD CAUSE OF ACTION

**Louisiana Unjust Enrichment; Art. 2298:**

'...amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished...'

25. Plaintiffs repeat and re-allege the facts and allegations set forth in Paragraphs 1 through 24 previously herein.

Art. 1910.  Gratuitous contracts

A contract is gratuitous when one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return.

26. Plaintiff alleges this was not a gratuitous contract and that the contract has not been stopped at any point since issued in 2006. The plaintiff seeks three-fold damages in hopes that Principal Mutual will understanding that its business practices were unfair and unjust. The plaintiff not only in good faith and with integrity awaited commissions but had a reasonable belief to do so. And again Principle Life had and has access to all facts of Nola Smith's records, she had been their client for 10 years; and Ronald Smith, her agent and Principal's broker; and to this day still the representative on the policy.

Art. 2324.1. Damages; discretion of judge or jury

In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.

## PRAYER FOR RELIEF

27. The Plaintiff (Ronald Smith) asks for damages or relief as previously stated in the causes of action; and according to the statutes referenced in each of the causes of action.

28. The plaintiff (Ronald Smith) seeks the 1% commission as well as whatever compensatory, emotional, punitive and or exemplary damages are deemed fair by Judge or Jury.

29. The Plaintiff asks for treble damages.

30. The Plaintiff asks for any fees occurred due to this case; whether court cost or future attorney fees.

31. The Plaintiff asks for any and all other relief the Court deems just and appropriate.

32. The Plaintiff asks for a response within 30 days of notice.

33. Should Principal Life not desire to settle in a mutual and fair way with the plaintiff, the plaintiff asks for a JURY TRIAL.


Dated in Baton Rouge, Louisiana; April 19, 2017

Respectfully submitted pro se:

Ronald E. Smith, Jr.

3916 White Oak Trace Dr.

Baton Rouge, LA 70817

225- 938-8165 Cell; 225-753-0810 Home

Plaintiff: signature


Service address for Principal Life

Louisiana Department of Insurance

P. O. Box 94125

Baton Rouge, LA 70804-9125

1-800-259-5300

Physical address:

1702 North 3rd Street

Baton Rouge, LA 70802-9125